UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x      05 Civ. 10230 (SAS)
STEPHEN WILLIAMS,

                                    Plaintiff,

        -against-

THE CITY OF NEW YORK, POLICE OFFICER
ANDREW EATON (Shield No. 21455), SERGEANT
THOMAS McCARTHY (Shield No. 4798),
RETIRED OFFICER SCOTT CARRELL, and
POLICE OFFICER LAWRENCE NEYLAND,

                                    Defendants.
-----------------------------------------------------------------x


**PLAINTIFF STEPHEN WILLIAMS' PROPOSED REQUEST TO CHARGE**

**Request No. 1**

      There are three types of encounters between police and citizens, each implicating different levels of protection from the Fourth Amendment. The first type is the consensual encounter whereby an individual voluntarily agrees to speak with police. Such contact may be initiated by the police without any objective level of suspicion and does not implicate the Fourth Amendment. The second type of encounter, based on principles articulated by Terry, involves a limited investigative stop. Such investigative detentions are seizures under the Fourth Amendment. The third and final type of encounter is an arrest, plainly a Fourth Amendment seizure, which must be based on probable cause. If a reasonable person believes that he or she would not be free to leave under the circumstances, that person has been seized under the Fourth

Amendment. - <u>Dasher v. Hughes</u>, 1998 U.S. LEXIS 15513 (D.N.Y, Dept 24, 1998 HN9)

**Request No. 2**

Law enforcement officers may initiate an investigatory detention only if they have reasonable, articulable suspicion of criminal activity. To meet this standard, the government must point to specific and articulable facts, together with rational inferences drawn from those facts, that reasonably suggest criminal activity has occurred or is imminent.  Inarticulable hunches or generalized suspicions are insufficient. *See Ybarra v. Illinois*, 444 U.S. 85, 92-93 (1979);

**Request No. 3**

There mere presence of an individual in an area prone to drug dealing or where drug transactions have taken place in the past is not enough to meet this standard.  *Rivera v. Murphy*, 979 F.2d 259, 264 (1st Cir. 1992); *U.S. v. Jones*, 149 F.3d 364, 367 (5th Cir. 1998);  It is not reasonable articulable suspicion merely because a person is alleged to have acted nervously in the presence of the police. *U.S. v. Caicedo*, 85 F.3d 1184, 1190 (6th Cir. 1996); *U.S. v. Johnson*, 170 F.3d 708, 715-20 (7th Cir. 1999); *U.S. v. Halls*, 40 F.3d 275, 276 (8th Cir. 1994) *U.S. v. Davis*, 94 F.3d 1465, 1470 (10th Cir. 1996); *U.S. v. Smith*, 799 F.2d 704, 707-08 (11th Cir. 1986).

**Request No. 4**

Generalized fear of criminal activity and the presence of a suspect in a high crime neighborhood are factors that, standing alone, do not justify seizure. See *Brown v. Texas*, 443 U.S. 47, 52 (1979); *U.S. v. Sprinkle*, 106 F.3d 613, 618 (4th Cir. 1997) *U.S. v. Hernandez-*

*Alvarado*, 891 F.2d 1414, 1418-19 (9th Cir. 1989) *U.S. v. Salzano*, 158 F.3d 1107, 1111-15 (10th Cir. 1998);

**Request No. 5**

Generalized suspicion of criminal activity based solely on race also does not justify seizure. *See U.S. v. Brignoni-Ponce*, 422 U.S. 873, 885-86 (1975) (no reasonable suspicion for border agent to detain person based solely on apparent Mexican ancestry); *see, e.g.*, *U.S. v. Grant*, 920 F.2d 376, 388 (6th Cir. 1990) (no reasonable suspicion to detain person when agents' only indicia of suspicion were assumption that man of color wearing dreadlocks was illegal alien from Jamaica and fact that he traveled from drug-source city);

**Request No. 6**

The police cannot justify the arrest by the search and the search by the arrest. In *Johnson v. United States*, 33 U.S. 10, 16, 68 S.Ct. 367, 370 (1948) the Supreme opined:

> Thus the government is obliged to justify the arrest by the search and at the same time to justify the search by the arrest. This will not do. ... Any other rule would undermine 'the right of the people to be secure in their persons, houses, papers, and effects,' and would obliterate one of the most fundamental distinctions between our form of government, where the officers are under the law, and the police-state where they are the law."

**Request No. 7**

During a Terry Stop, officers may conduct a pat-down frisk if the officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and dangerous. Further, where nothing in the initial stages serves to dispel his reasonable fear for his own or others' safety, he is entitled to conduct a pat down frisk, which is a carefully limited search of outer clothing of such persons in an attempt to discover weapons. Gonzalez v. City of Schenectady, 2001 U.S. Dist. LEXIS 14406 (D.N.Y. September 17, 2001) See also United States v. Reid, 351 F. Supp. 714 (1972) (Terry type search consists solely of a limited patting of the outer clothing of the suspect for concealed objects which might be used as instruments of assault).

**Request No. 8**

*Terry Stops*, because they are investigative in nature, must be brief and reasonably related in scope to the circumstances which justified the intervention in the first place. If such a stop last longer than is necessary to effectuate the purposes of the stop or employs tactics more invasive than necessary under the circumstances, then the stop becomes a de facto arrest for which the officer must have probable cause to believe that a crime has occurred - *Gonzalez v. City of Schenectady*, 2001 U.S. Dist. LEXIS 14406 (D.N.Y. September 17, 2*001); Simmons v City of Paris* (2004, CA5 Tex) 378 F3d 476; United States v. Babwah, 192 F.2d 30, (2d. Cir. 1992)

**Request No. 9**

Probable cause has been defined as "the facts and circumstances within [the officers']

knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed [by the person to be arrested]. -Brinegar v. United States, 338 U.S. 160, 175-76, quoting Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280 (1925). The evidence to support probable cause need not be enough to support conviction but "must constitute more than rumor, suspicion, or even a 'strong reason to suspect:'". United States v. Fisher, 702 F.2d 372, 375 (2d Cir. 1983). Failing to make inquiries a reasonable officer would make in the circumstances would also go against a finding of probable cause. See Colon v. City of New York, 60 N.E.2d 78, 455 N.E.2d 1248 (C.A. N.Y. 1983) citing Sweet v. Smith, 42 App. Div. 502.

**Request No. 10**

The standard for measuring probable cause is that of a "reasonably well trained police man" acting reasonably. United States v. Leon, 468 U.S. 897, 919-20, 104 S. Ct. 3405, 3418-19 (1984). "[A] subjective good faith in the legality of the arrest is not enough... . " Raysor v. Port Authority of New York and New Jersey, 768 F.2d 34, 40 (2d Cir. 1985)

**Request No. 12**

Plaintiff would have an arrest without probable cause claim where after the initial stop, there was no probable cause to believe that he had committed a crime and the officers continued to detain him. (Cf. *Gonzalez v. City of Schenectady*, 2001 U.S. Dist. LEXIS 14406 (D.N.Y. September 17, 2001)

**Request No. 13**

Officers cannot create probable cause by their own actions of provoking Plaintiff when there was no probable cause to begin with. *McLaurin v. Falcone,* 2007 U.S.App. LEXIS 1839 (2d Cir. 2007).

**Request No. 14**

There must be probable cause that the arrestee committed some "independent crime" at the time that he resisted for there to be probable cause for the resisting arrest. Curry v. City of Syracuse, 316 F.3d 324, 336 (2d Cir. 2003) ["It is well established in New York that 'probable cause to arrest is a prerequisite for making an authorized arrest' and if there is no probable cause to arrest a person, that person 'cannot be guilty of resisting arrest.'" (quoting People v. Mohamadou, 182 Misc.2d 77 (N.Y. Crim. Ct. 1999)].

**Request No. 15**

"There can be no cavil with the proposition that a citizen may use reasonable force in self defense where the force exerted by the police in effectuating an arrest is excessive"- *People v. Stevenson,* 31 N.Y.2d at 112 (Ct of Appeals 1972) cited with approval by 2d Circuit in Curry v. City of Syracuse, 316 F.3d 324, 336 (2d Cir. 2003) A person cannot be convicted of resisting arrest where the police had no probable cause to arrest him at the time he allegedly resisted and also *People v. Branch* 223 A.D.2d 882, 637 N.Y.S.2d 220 (N.Y. App. Div. 1996)  Curry v. City of Syracuse, 316 F.3d 324, 336 (2d Cir. 2003)

**Request No. 16**

An uncorroborated suspicion will not give rise to a finding of probable cause. Cf. - Contee v. United States, 215 F.2d 324,327 (1954 U.S. App. D.C.) ; Cochran v. United States, 291 F.2d 633 (8th Cir. 1961).

**Request No. 17**

Falsifying or creating evidence to justify an arrest or create probable cause or later falsifying evidence after the arrest are remediable in an action for damages under § 1983. See *Jocks v. Tavernier,* 316 F.3d 128 (2d Cir. 2003); *Ricciuti v. New York City Transit Authority,* 124 F.3d 123 (2d Cir. 1997). When a police officer creates a false information likely to influence the Grand Jury or jurors and sends same to prosecutors, those actions are malicious and Plaintiff is entitled to recover for malicious prosecution under the circumstances.

**Request No. 18**

A finding of lack of probable cause is prima facie evidence of malice. If you find that the officers had no probable cause to arrest Plaintiff, you may conclude that they acted with malice. See Lowth v. The Town of Cheektowaga, 82 F.3d 563, 573 (2d Cir. 1996) A jury could find that probable cause to arrest plaintiff was lacking, "and that finding alone would support an inference of malice". Ricciuti v. N.Y.C. Transit Authority, 124 F.3d 123,131 (2d Cir. 1997).

**Request No. 19**

The doctrine of qualified immunity extends to official conduct that does not violate

clearly established constitutional rights of which a reasonable person would have known - Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). It must also be objectively reasonable for officials to believe that their conduct did not violate such rights. Anderson v. Creighton, 483 U.S. 635, 641

**Request No. 20**

"The right to be free from arrest or prosecution in the absence of probable cause is a long established constitutional right. A police officer is entitled to qualified immunity shielding him or her from a claim of damages for false arrest (1) it was objectively reasonable for the officer to believe there was probable cause to make the arrest, or (2) reasonably competent police officers would disagree as to whether there was probable cause to make the arrest." Ricciuti, supra at 128, citing Golino v. City of New Haven, 950 F.2d 864, 970 (2d Cir. 1991)

**Request No. 21**

Qualified immunity is an affirmative defense to which the defendants bear the burden of proving. See Hunter v. Bryant, 502 U.S. 224; 112 S. Ct. 534 (1991); Harlow v. Fitzgerald, 457 U.S. 800, 815; 102 S. Ct. 2727 (1982). The defendants cannot succeed in their defense of qualified immunity when they knew that there was no probable cause to arrest.

**Request No. 22**

The Fourth Amendment is meant to prevent whole sale intrusions upon the personal security of the citizenry, whether these intrusions be termed "arrests" or "investigatory"

detentions - United States v. Reid, 351 F. Supp. 714 (1972).

**Request No. 23**

The Fourth Amendment prohibits "unreasonable' searches and seizures. Courts have repeatedly recognized the importance of guarding against unreasonable strip searches, in view of the degrading nature of this particular invasion of privacy. - Sarnicola v. County of Westchester, 229 F. Supp. 2d 259; 2002 U.S. Dist. LEXIS 20305 (S.D.N.Y 2002)

**Request No. 24**

A particularized reasonableness analysis is required to establish the lawfulness of any warrantless strip search, even one conducted incident to a lawful arrest. A determination of reasonableness must be based on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself. The reasonable suspicion test is objective, not subjective– that is, the test is whether a reasonable officer could have particularized suspicion considering the totality of the circumstances. - Sarnicola v. County of Westchester, 229 F. Supp. 2d 259; 2002 U.S. Dist. LEXIS 20305 (S.D.N.Y 2002) Sarnicola HN8

**Request No. 25**

With respect to the validity of a strip search, a "reasonable suspicion" of wrong doing is something stronger than a mere "hunch", but something weaker than probable cause. To establish reasonable suspicion, officials must point to specific objective facts and

detentions - United States v. Reid, 351 F. Supp. 714 (1972).

**Request No. 23**

The Fourth Amendment prohibits "unreasonable' searches and seizures. Courts have repeatedly recognized the importance of guarding against unreasonable strip searches, in view of the degrading nature of this particular invasion of privacy. - Sarnicola v. County of Westchester, 229 F. Supp. 2d 259; 2002 U.S. Dist. LEXIS 20305 (S.D.N.Y 2002)

**Request No. 24**

A particularized reasonableness analysis is required to establish the lawfulness of any warrantless strip search, even one conducted incident to a lawful arrest. A determination of reasonableness must be based on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself. The reasonable suspicion test is objective, not subjective– that is, the test is whether a reasonable officer could have particularized suspicion considering the totality of the circumstances. - Sarnicola v. County of Westchester, 229 F. Supp. 2d 259; 2002 U.S. Dist. LEXIS 20305 (S.D.N.Y 2002) Sarnicola HN8

**Request No. 25**

With respect to the validity of a strip search, a "reasonable suspicion" of wrong doing is something stronger than a mere "hunch", but something weaker than probable cause. To establish reasonable suspicion, officials must point to specific objective facts and

rational inferences that they were entitled to draw from those facts in light of their experience. The standard requires individualized suspicion, specifically directed to the person who is targeted for the strip search. Sarnicola v. County of Westchester, 229 F. Supp. 2d 259; 2002 U.S. Dist. LEXIS 20305 (S.D.N.Y 2002) Sarnicola HN 11

**Request No. 26**

An automatic justification for strip searches based on arrest for a drug related crime would be inconsistent with the legal concept of reasonable suspicion based on the totality of the circumstances. A strip search is not objectively reasonable where there is no "individualized suspicion", and pure speculation does not create a reasonable suspicion, nor does a generalized fear of a category of arrestees. No officer of reasonable competence could think that ordering a strip without individualized reasonable suspicion is justified.- Sarnicola v. County of Westchester, 229 F. Supp. 2d 259; 2002 U.S. Dist. LEXIS 20305 (S.D.N.Y 2002) (Hns. 14, 15 & 20)

**Request No. 27**

If you find that Plaintiff was subjected to a strip search, you must conclude that that search was unlawful as defendants are not offering any evidence or justification for the strip search. Cf. *See* Weber v. Dell, 804 F.2d 796, 802 (2d Cir. 1986), cert. denied sub no County of Monroe v. Weber, 483 U.S. 1020 (1987).  *See* Shain v. Ellison, 273 F.3d 56 (2d Cir. 2001); Kaufman v. Rivera, 1999 U.S. App. LEXIS 6259 (2d Cir. 1999); Wachtler v.County of Herkimer, 35 F.3d 77 (2d Cir. 1994); Elk v. Townson, 839 F.Supp. 1047 (2d

10

Cir. 1993). "A fair reading of Second Circuit law on the subject suggests that strip searches of misdemeanor arrestees will be the exception, not the rule." Dodge v. County of Orange, 209 F.R.D. 65, 72 (S.D.N.Y. 2002). The Southern District has applied this standard to felony arrestees as well. *See* Sarnicola v. County of Westchester, 229 F.Supp.2d 259, 270 (S.D.N.Y. 2002 [citing Murcia v. County of Orange, 226 F.Supp.2d 489 (S.D.N.Y. 2002); Dodge v. County of Orange, 209 F.R.D. 65, 72 (S.D.N.Y. 2002)].

**Request No. 28**

If you conclude that after patting Plaintiff down Defendants found no drugs, you may conclude that the further intrusive search from which they allegedly found drugs was not legally justified. *See* Johnson v. Harron, 1995 U.S. Dist. LEXIS 7328 at *34 (N.D.N.Y. 1995) [Court held that "the minimally intrusive searches of plaintiff and his effects in this case uncovered no weapons, contraband or other bulges. Thus, rather than providing the United States Defendants with a further reason to suspect plaintiff of concealing illicit materials, these preliminary searches should have dispelled most, if not all of defendants' suspicions. At the very least, these searches did not provide the United States Defendants with the "reasonable suspicion" necessary to justify their decision to conduct a far more intrusive strip search."] *See* Foote v. Spiegel, 118 F.3d 1416, 1425 (10th Cir. 1997) (In finding that the defendants' strip search of the plaintiff was unreasonable, the Court noted that a pat-down search of Plaintiff's "light summer clothing" did not reveal anything.) (cited in Hartline v. Gallo, 2006 U.S. Dist. LEXIS 75849 at *18 (E.D.N.Y. Sept. 30, 2006).

**Request No. 29**

In considering whether or not Police had reasonable cause to believe that Plaintiff was secreting drugs which required a strip search, you may consider whether Plaintiff had any opportunity to secret drugs between the time he was approached in the street and the time he was strip searched and whether Plaintiff had any warning of his encounter with the police and time and opportunity to hide the drugs.  See Sarnicola v. County of Westchester, 229 F.Supp.2d 259, 273 (S.D.N.Y. 2002) (In finding the defendants' strip search of the plaintiff was"apprehended, without warning, at the scene of the crime and had no opportunity to hide anything."); Shain v. Ellison, 273 F.3d 56, 64 (2d Cir. 2001) ("Unlike persons already in jail who receive contact visits, arrestees do not ordinarily have notice that they are about to be arrested and thus an opportunity to hide something."); Foote, 118 F.3d at 1425 (In finding that the defendants' strip search of the plaintiff was unconstitutional, the Court noted that the plaintiff had been "under uninterrupted police supervision") You may conclude, if you find that Plaintiff was within uninterrupted police supervision between his arrest and the strip search that the search was unconstitutional.

**Request No. 30**

Being arrested for a drug-related crime does not  automatically justify a strip search, as such an automatic justification "would be inconsistent with  the legal concept of reasonable suspicion based on the *totality* of the circumstances."  See   Sarnicola, 229 F.Supp.2d at 270 (citing cases).

**Request No. 31**

The interests in human dignity and privacy which the Fourth Amendment protects forbid any such intrusions [beyond the body's surface] on the mere chance that desired evidence might be obtained. In the absence of a clear indication that in fact such evidence will be found, these fundamental human interests require law officers to suffer the risk that such evidence may disappear unless there is an immediate search.- *Schmerber v. California*, 384 U.S. at 769-70; *see People v. More*, 97 NY2d at 213.

**Request No. 32**

To justify a strip search, defendants have the burden of proving exigent circumstances justifying the absence of a warrant. *Schmerber v. California*, 384 U.S. at 770. *Schmerber* noted that the mere fact that a person had been legally arrested does not end the inquiry, *id*. at 769, and that a warrant is required to execute a search beyond the surface of the body unless there is evidence that an officer "'might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant' posed a threat to the officer's personal safety or of the destruction of the evidence." *People v. More*, 97 N.Y.2d at 214, quoting, *Schmerber v. California*, 384 U.S. at 770. *More* further defined exigent circumstances as access to weapons, destruction of evidence and absorption of drugs into the body. *People v. More*, 97 N.Y.2d at 214.

**Request No. 33**

If you conclude that the officers did not have a reasonable particularized suspicion

that Plaintiff had committed or was committing an offence when the approached him and started searching him, then you must find for Plaintiff in all his claims. If you conclude that the Officers had a justifiable right to make the initial Terry Stop but that after making the stop and searching Plaintiff they had no probable cause to continue to detain him, then you should find for Plaintiff on this arrest without probable cause. It is a violation of plaintiff's constitutional rights to continue to hold him in detention when there is no evidence to do so or after evidence of his innocence has become available to the arresting officer. See Vance v. Nunery, 137 F.3d 270 (5th Cir. 1998); Sanders v. English, 950 F.2d 1152 (5th Cir. 1992); Gay v. Wall, 761 F.2d 175 (4th Cir. 1985).

**Request No. 34**

A law enforcement officer has an affirmative duty to intercede on behalf of a citizen whose constitutional rights are being violated in his presence by other officers - *O'Neil v. Krzeminski,* 839 F.2d 9, 11 (2d Cir. 1988) (excessive force); *Byrd v. Clark,* 783 F.2d 1002, 1007 (11th Cir. 1986) (excessive force); *Skorupski v. County of Suffolk,* 652 F. Supp. 690, 694 (E.D.N.Y. 1987) (excessive force).

**Request No. 35**

If you find that Plaintiff has established any of his claims, you may award him compensatory damages for injuries such as emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life.

**Request No. 36    INSTRUCTIONS ON DAMAGES**

There is no requirement that a claim of emotional distress be supported by proof of expenses, lost earnings, or specifically measurable damages. No expert testimony is necessary to prove such harm, and you may rest your findings solely on plaintiffs's testimony.

Carey v. Piphus, 435 U.S. 247, 263-64 & n.20 (1978); 42 U.S.C. § 2000e-5(g), as amended by the Civil Rights Act of 1991; Miner v. City of Glens Falls, 999 F.2d 655, 663 (2d Cir. 1993); Carrero v. New York City Housing Auth., 890 F.2d 569, 581 (2d Cir. 1989); Batavia Lodge No. 196 v. New York State Div. of Human Rights, 35 N.Y.2d 143, 146-47, 316 N.E.2d 318, 319-20, 359 N.Y.S.2d 25, 27-28 (1974); New York City Transit Auth. V. State Div. of Human Rights, 78 N.Y.2d 207, 216, 577 N.E.2d 40, 41, 573 N.Y.S.2d 49, 54 (1991); Sogg v. American Airlines, Inc., 193 A.D.3d 153, 163, 603 N.Y.S.2d 21, 24 (1st Dep't 1993).

A.    The fact that I am instructing you on the issue of damages does not mean that Plaintiff is entitled to prevail. It will be entirely for you to decide. I am instructing you on the subject, so that in the event you decide that Plaintiff has sustained his burden, you will be able to do the rest of your job in the jury room.

B.    Now, if you find for Plaintiff, you should compensate him for any emotional

15

pain and suffering which resulted from the wrongful conduct you will have determined occurred. And this includes any pain, emotional or mental disability, any mental anguish, and general loss of the capacity to enjoy life, which he has experienced and which you find from the evidence he is likely to experience as a proximate result of the incidents he has complained of as well as damages for past pain and suffering as well as for future pain and suffering.

C. Now, no evidence of the value of such intangible things as mental pain or suffering or anguish has been introduced, and it need not be introduced, because in that respect it is not value you are trying to determine. Rather, you are trying to determine an amount that would fairly compensate Plaintiff for the injury he sustained.

D. There is no exact standard for fixing compensation to be awarded on account of such intangible injury. You may evaluate mental anguish, pain and suffering in light of your own every day experiences as aware and mature people. Any award that is made should be fair and just in light of all of the evidence.

A. Now, in addition to compensatory or actual damages, each Plaintiff is asking you to make an award of punitive damages. Punitive damages are permitted in actions that, like the present, are filed under 42 U.S.C. § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56, 103 S.Ct. 1625 (1983)

16

See also <u>McCurn v. City of Niagara Falls,</u> 1999 U.S. App. LEXIS 3484 at p. 4 (2nd Cir. 1999). Punitive damages is awarded  punish a wrongdoer for conduct which is determined is outrageous, wanton, or,  egregious and to deter persons from engaging in similar conduct in the future. A punitive damage award "may be an integral part of the remedy in a civil rights action." <u>*Zarcone v. Perry,*</u> 572 F.2d 52, at 54; <u>*O'Neil v. Krzeminski,*</u> 839 F.2d 9 at 13.

    B. Punitive damages may be awarded against supervisors even when they have not directly participated int the use of excessive force- <u>McCurn v. City of Niagara Falls,</u> 1999 U.S. App. LEXIS 3484 at p. 6 (2nd Cir. 1999)..

    C.    Now, outrageous conduct is conduct which is performed with an evil motive or with reckless indifference to the rights and interest of others. It is conduct that is malicious, wanton, reckless, willful or oppressive.  Reckless indifference of the rights or interest of others occurs when someone know facts which create a high degree of risk of harm to the interest or rights of another.  And then deliberately proceeds to act or to fail to act in conscious disregard or indifference to that risk.

    D.    Now, punitive damages should never be awarded because of sympathy or bias or prejudice with regard to any party.  However, the law  is designed to protect people and enforce the rights of the people. If you determine that any of the individual defendants maliciously or wantonly battered plaintiffs , you may properly award him punitive damages

against such individuals.

Dated: Brooklyn, New York
       October 12, 2007

                                      OFODILE & ASSOCIATES, P.C.

                                      By s/b
                                      Anthony C. Ofodile, Esq. (AO-8295)
                                      498 Atlantic Avenue
                                      Brooklyn, New York 11217
                                      718-852-8300