UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------X
                        :

STEPHEN WILLIAMS,              :

                        :

              Plaintiff,     :     **OPINION AND ORDER**

                        :

       - against -           :     **05 Civ. 10230 (SAS)**

                        :

SERGEANT THOMAS McCARTHY  :
and POLICE OFFICER LAWRENCE  :
NEYLAND,                      :

                        :

            Defendants.    :

                        :

------------------------------------------------X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

        Plaintiff, Stephen Williams, brings this action under 42 U.S.C. § 1983

("section 1983") alleging constitutional violations resulting from false arrest,

malicious prosecution, and an unlawful strip-search in connection with his arrest

on May 24, 2004.  In July of 2007, this Court issued an Opinion and Order

dismissing the City of New York and Police Officer Andrew Eaton as defendants.[1]

Williams had discontinued this action against Retired Officer Scott Carrell.[2]  Thus,

---

[1]     *See Williams v. City of New York*, No. 05 Civ. 10230, 2007 WL
2214390 (S.D.N.Y. July 26, 2007).

[2]     *See id.* at *1 n.1.

the two defendants remaining in this case are Sergeant Thomas McCarthy and

Police Officer Lawrence Neyland.  A trial has been scheduled for November 5,

2007.  In anticipation of that trial, defendants have made eight motions in limine.[3]

Plaintiff has opposed these motions.[4]  In addition, plaintiff asks this Court to direct

defense counsel "to bring all records of disciplinary proceedings against the

officers as well as complaints against them made to any City agency or office,

including the Internal Affairs, the CCRB, etc."[5]  Defendants' motions are

addressed as follows.

## II.   DISCUSSION

### A.   Defendants Request Permission to Offer Evidence of Plaintiff's Prior and Subsequent Felony and Misdemeanor Convictions

Defendants seek to offer the following three categories of other-

crimes impeachment evidence against plaintiff: (1) felony convictions within the

past ten years; (2) offenses that constitute *crimen falsi* within the past ten years;

and (3) felony and misdemeanor convictions beyond ten years.

---

[3]     *See* Defendants McCarthy and Neyland's Memorandum of Law in Support of Their Motion in *Limine* ("Def. Mem.").

[4]     *See* Plaintiff's Response to Defendants' Motion in Limine ("Pl. Mem.").

[5]     *Id.* at 8.

2

## 1.    Prior Felony Convictions Within the Past Ten Years

Plaintiff has been convicted of the following felonies within the past

ten years: (1) 10/5/99 - Attempted Robbery in the Second Degree, a Class D

Felony; (2) 3/31/05 - Grand Larceny in the Fourth Degree - a Class E Felony; and

(3) 11/1/05 - Grand Larceny in the Fourth Degree - a class E Felony.  Defendants

seek permission to cross-examine plaintiff with these convictions in order to attack

his credibility.  Plaintiff objects on the ground that these convictions constitute

inadmissible character evidence which defendants are offering solely to show that

plaintiff has criminal propensities.

Federal Rule of Evidence 609, entitled "Impeachment by Evidence of

Conviction of Crime," governs the admissibility of criminal convictions for

impeachment purposes in civil actions.  Rule 609 states that for the purpose of

attacking the character for truthfulness of a witness, evidence that a witness other

than an accused has been convicted of a crime shall be admitted, subject to Rule

403, if the crime was punishable by imprisonment of more than one year.[6]  "In

balancing probative value against prejudicial effect under this rule, courts examine

the following factors: (1) the impeachment value of the prior crime, (2) the

remoteness of the prior conviction, (3) the similarity between the past crime and

---

[6]       *See* Fed. R. Evid. 609(a)(1).

3

the conduct at issue, and (4) the importance of the credibility of the witness."[7]

I find that the three convictions in issue – one for Attempted Robbery and two for Grand Larceny – are admissible to impeach plaintiff's credibility on cross-examination. *First*, stealing is sufficiently related to veracity. *Second*, the convictions are not so remote as to diminish their probative value. In fact, the two Grand Larceny convictions post-date the incident in issue and are therefore highly probative. *Third*, the prior crimes are not similar to the alleged criminal activity and will therefore not lead the jury to conclude that plaintiff had a propensity to engage in narcotics offenses. *Finally*, because the versions of the events by the parties are radically different, witness credibility will be especially important in this case. I therefore find the three felonies described above to be admissible to impeach plaintiff's credibility. Defense counsel will be limited, however, to eliciting the nature of the crime, the date of conviction, and the sentence. Extrinsic evidence will not be allowed.

## 2.    Crimes Constituting *Crimen Falsi*

Defendants also seek to introduce evidence of other convictions occurring within the last ten years that constitute *crimen falsi*. These crimes

---

[7]    *Daniels v. Loizzo*, 986 F. Supp. 245, 250 (S.D.N.Y. 1997) (citing *United States v. Hayes*, 553 F.2d 824, 828 (2d Cir. 1977)).

4

include: (1) 11/17/05 - conviction for Fraudulent Accosting; and (2) 12/1/04 -

arrest for Fraudulent Accosting. Defendants also seek to offer the testimony of the

police officers with respect to these arrests as extrinsic evidence to establish the

fraudulent nature of these crimes.[8]

   While Fraudulent Accosting is a *crimen falsi* crime,[9] I note that

Federal Rule of Evidence 609(a)(2) applies when a witness, including a party, "has

been *convicted* of a crime" involving dishonesty or false statement.[10] Accordingly,

plaintiff's arrest for Fraudulent Accosting on December 1, 2004, which did not

lead to a conviction for Fraudulent Accosting, is not admissible. Although

plaintiff's Fraudulent Accosting conviction in 2005 is admissible, I will not permit

defendants to introduce extrinsic evidence in support of that conviction.[11] To

---

   [8]   *See* Def. Mem. at 10 ("Therefore, defendants should be permitted to introduce not only evidence of plaintiff' arrest, conviction and sentence for his fraudulent accosting crime, but also extrinsic evidence regarding the circumstances of his arrests to establish the fraudulent nature of the crimes.").

   [9]   *See Martin v. National R.R. Passenger Corp.*, No. 97 Civ. 8381, 1998 WL 575183, at *4 (S.D.N.Y. Sept. 9, 1998).

   [10]   *See* Fed. R. Evid. 609(a)(2) ("evidence that any witness has been convicted of a crime shall be admitted regardless of the punishment, if it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness").

   [11]   *See United States v. Purdy*, 144 F.3d 241, 245-46 (2d Cir. 1998) (stating that "extrinsic evidence offered for impeachment on a collateral issue is properly excluded").

avoid a trial within a trial, cross-examination of plaintiff with regard to his Fraudulent Accosting conviction will be limited to eliciting the crime, the court, the date of conviction, and the sentence.[12]

### 3. Prior Arrests and Convictions Beyond Ten Years

Finally, defendants seek to introduce plaintiff's prior arrests and convictions for misdemeanors and felonies beyond ten years on the theory that they rebut plaintiff's articulated defense and theory of his case. To wit, defendants point out that plaintiff stated in a document filed with this Court that defendants could not have reasonably believed plaintiff was engaged in criminal activity in such a busy area in broad daylight.[13] To rebut this assertion, defendants seek to introduce a chart detailing eleven separate occasions where plaintiff pled guilty to

---

[12]    *See Martin*, 1998 WL 575183, at *4 (citing *United States v. Blanco*, 861 F.2d 773, 781 (2d Cir. 1988) for the proposition that "[t]he scope and extent of cross-examination lies within the discretion of the trial judge").

[13]    *See* Plaintiff Stephen William's Memorandum in Opposition to Defendants' Motion for Summary Judgment at 7 ("Another factor that undermines the reasonableness and credibility of Defendant McCarthy's assertion [that plaintiff engaged in two hand-to-hand transactions] was that by Defendants' own admission, the corner where Plaintiff was standing was a busy shopping area and the time was in the middle of the day. It is highly unlikely that someone would be selling drugs in such an active area in broad daylight, so even assuming *arguendo* that Defendant McCarthy truly had this belief about Plaintiff, it was an unreasonable belief.") (citations omitted).

crimes committed in busy areas during daylight hours.[14]

Convictions that are more than ten years old are not admissible "unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect."[15]   Furthermore, defendants' argument anticipates that plaintiff will raise this co-called busy area/broad daylight defense at trial.  If plaintiff does, in fact, raise this defense in any manner, defendants will be permitted to cross-examine him with regard to his conviction for Criminal Possession of a Controlled Substance in the Seventh Degree.  This drug conviction resulted from an arrest at 2:20 p.m. in the vicinity of West 42nd Street and is therefore especially probative.  Such cross-examination will be limited to the date of arrest, the location and time of arrest, the nature of the crime, and its disposition.  The other convictions detailed in defendants' chart – which are for non-drug offenses such as criminal nuisance, disorderly conduct, and assault – have little value in rebutting plaintiff's anticipated defense and will therefore not be admitted.

---

[14]     *See* Def. Mem. at 12.

[15]     Fed. R. Evid. 609(b) ("Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction . . . .").

7

## B.     Defendants Request Permission to Offer Evidence of Plaintiff's Prior Use of Aliases

Defendants seek to inquire, on cross-examination, into plaintiff's use of pseudonyms or aliases and different dates of birth.  Defendants claim that plaintiff's use of false identities in the past is directly relevant to his credibility.  I agree.  Rule 608(b) provides that specific instances of a witness' conduct may "in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness . . . ."[16]  A number of courts in this Circuit have held that a witness' use of false names or identities is the proper subject of cross-examination under Rule 608.[17]   The Ninth Circuit framed the issue most precisely when it stated:

> The issue is whether the use of false names bears directly
> enough upon the witness' veracity as to outweigh the
> general  prohibition  against  cross-examining  about
> particular acts of misconduct other than convictions of a
> crime. We think it does. If a man lies about his own name,

---

[16]     Fed. R. Evid. 608(b)(1).

[17]     *See, e.g., Fletcher v. City of New York*, 54 F. Supp. 2d 328, 333 (S.D.N.Y. 1999); *Brundidge v. City of Buffalo*, 79 F. Supp. 2d 219, 227 (W.D.N.Y. 1999); *Young v. Calhoun*, No. 85 Civ. 7584, 1995 WL 169020, at *5 (S.D.N.Y. Apr. 10, 1995).

might he not tell other lies?[18]

For this reason, plaintiff's use of aliases and different dates of birth may be raised on cross-examination.

### C.    Defendants Request Permission to Introduce Plaintiff's Criminal History Record

Defendants seek to offer into evidence "those portions of plaintiff's criminal record history ('Rap sheet'), properly redacted, which reflect his admissible felony and misdemeanor convictions, his pseudonyms and his use of multiple dates of birth."[19]  Because such evidence is cumulative of the Rule 609 and alias evidence already deemed admissible, defendants' request is denied.

### D.    Defendants Request Permission to Offer Evidence that Plaintiff was on Parole on May 24, 2004

Defendants seek to offer evidence that plaintiff was on parole at the time he was arrested on May 24, 2004, on the basis that "[p]laintiff's parole status at that time is relevant to explain plaintiff's conduct of resisting the officers and trying to flee the scene."[20]  It is well-established that:

---

[18]    *Lyda v. United States*, 321 F.2d 788, 793 (9th Cir. 1963).

[19]    Def. Mem. at 16.

[20]    *Id.* at 17.

> "The trial court may admit evidence that does not directly
> establish an element of the offense charged, in order to
> provide background for the events alleged . . . .
> Background evidence may be admitted to show, for
> example, the circumstances surrounding the events or to
> furnish an explanation of the understanding or intent with
> which certain acts were performed."[21]

Several courts have found evidence of an outstanding parole warrant

to be admissible, within the context of a section 1983 action, to demonstrate a

plaintiff's motive to resist arrest.[22]  In *United States v. Cruz*, evidence that the

defendant was on parole was introduced to explain why the defendant always

chose to utilize intermediaries in illegal drug transactions.[23]  In affirming the

admission of this evidence, the Third Circuit explained that parole status "has been

held to be probative of why a defendant would take extra steps to hide his criminal

activity."[24]  Accordingly, I find plaintiff's parole status to be relevant as to his

---

[21]     *United States v. Coonan*, 938 F.2d 1553, 1561 (2d Cir. 1991)
(quoting *United States v. Daly*, 842 F.2d 1380, 1388 (2d Cir. 1988)).

[22]     *See Daniels*, 986 F. Supp. at 248 (holding that outstanding parole
warrant was admissible to demonstrate plaintiff's motive to resist arrest in
plaintiff's section 1983 action alleging excessive force). *See also Dean v. Watson*,
No. 93 Civ. 1846, 1995 WL 692020, at *3 (N.D. Ill. Nov. 16, 1995) (holding that
evidence of two outstanding bond forfeiture warrants was admissible to show
plaintiff's motive to resist arrest).

[23]     *See* 326 F.3d 392, 394 (3d Cir. 2003).

[24]     *Id.* at 395. *Accord United States v. Manarite*, 44 F.3d 1407, 1418
(9th Cir. 1995) (explaining that defendant's parole status subjected him to police

10

intent and motive in resisting arrest on May 24, 2004, and will therefore be admitted as background evidence at trial.

### E.    Defendants Seek to Preclude Plaintiff From Offering Any Evidence of Physical Injury Sustained on May 24, 2004

Defendants seek to preclude plaintiff from offering any evidence that he sustained any physical injuries as a result of his May 24, 2004 arrest. Defendants argue that because this Court found plaintiff's physical injuries to be *de minimis* and therefore dismissed his excessive force claim, any testimony or evidence regarding physical injury would be prejudicial.  Plaintiff opposes such preclusion on the ground that "what happened during Plaintiff's arrest and how he was arrested is part and parcel of his claim for false arrest and claim for injuries."[25]

I agree with plaintiff.  Although plaintiff cannot bring an excessive force claim at trial, the officers' use of mace is part of the whole circumstances of his arrest.  In deciding plaintiff's claims, the jury should hear both sides of the story – the officers' allegations of plaintiff's use of force on them as well as their use of force on plaintiff.  To hold otherwise would present a one-sided version of the case.  Defendants' motion to preclude plaintiff from offering evidence of

---

scrutiny and the risk of greater punishment if caught).

[25]     Pl. Mem. at 6.

11

physical injury is therefore denied.

**F.    Defendants Seek to Preclude Plaintiff From Offering Any Evidence of Complaints he Made to the Civilian Complaint Review Board ("CCRB") as well as the CCRB's Findings and Conclusions**

Defendants argue that plaintiff should be precluded from introducing

evidence of the CCRB investigation into the May 24, 2004 incident because such

evidence would "only confuse and mislead the jury."[26]   Defendants further argue

that any findings or conclusions of the CCRB are hearsay and therefore

inadmissible.  In a similar vein, defendants object to plaintiff's listing of an

"Internal Affairs Investigator" as a witness.[27]

Public records and reports, however, are not excluded as hearsay.

Rule 803(8) provides that "[r]ecords, reports, statements, or data compilations, in

any form, of public offices or agencies, setting forth . . . factual findings resulting

from an investigation made pursuant to authority granted by law" are admissible in

---

[26]    Def. Mem. at 19.

[27]    *See* Proposed Joint Pretrial Order ("JPTO") at 3 ("Defendants object to this witness on the grounds that there was no Internal Affairs Investigation. However, construing this witness to mean that plaintiff intends to call an investigator with the Civilian Complaint Review Board as a witness, defendants object on the grounds that the Civilian Complaint Review Board investigation and determination are inadmissible under Rules 401, 403, and 403 of the Federal Rules of Evidence and are inadmissible as hearsay under Rule 802 of the Federal Rules of Evidence, and the testimony invades the province of the jury.").

civil proceedings "unless the sources of information or other circumstances indicate lack of trustworthiness."[28]  Accordingly, plaintiff will be permitted to testify with regard to his dealings with the CCRB.  Moreover, plaintiff may call a witness from the CCRB to authenticate that agency's investigation into plaintiff's claims and its findings with regard thereto.

Defendants also seek to preclude plaintiff from introducing any prior complaints made to the CCRB concerning either Sergeant McCarthy or Officer Neyland on the ground that any purported probative value would be substantially outweighed by the resulting prejudice.  On the other hand, plaintiff argues that "[d]efendants['] records may be relevant for impeachment purposes if they argue that they were never disciplined or were never involved in the same type of circumstances before."[29]  Although plaintiff does not specify exactly what types of records he is referring to, it is reasonable to assume that he means New York City Police Department disciplinary records, as well as any prior complaints made to the CCRB.

---

[28]     Fed. R. Evid. 803(8).  *See also Hill v. City of New York*, No. 03 CV 1283, 2005 WL 3591719, at *4 n.1 (E.D.N.Y. Dec. 30, 2005) (concluding that a CCRB report, which represented the factual findings of the investigation of plaintiff's complaint, was admissible as a public record under Rule 803(8)(C)).

[29]     Pl. Mem. at 6-7.

In support of their argument, defendants cite *United States v. Smith*,[30] as an example of a court precluding cross-examination of police officers about prior CCRB complaints. In *Smith*, the court held that "[t]he proceedings before the CCRB lack formality, are unrelated to the instant action, and are only tangentially relevant if at all . . . ."[31]  In support of its holding, the *Smith* court cited *United States v. Lawes*,[32] where the Second Circuit precluded a criminal defendant from cross-examining a police officer about a prior complaint for using excessive force against an arrestee in an unrelated case.[33] The court in *Lawes* found the proposed cross-examination to be of little relevance to the officer's credibility given that the CCRB's prior finding provided "nothing of value with respect to [the officer's] motivation to lie about the circumstances of appellant's arrest in the present case."[34]

Both *Smith* and *Lawes* involved criminal proceedings and are therefore distinguishable on that basis. In section 1983 actions, "[p]laintiffs are

---

[30]   No. 06 CR 203, 2007 WL 188734, at *1 (S.D.N.Y. Jan. 24, 2007).

[31]   *Id.*

[32]   292 F.3d 123, 131-32 (2d Cir. 2002).

[33]   *See* 2007 WL 188734, at *1.

[34]   292 F.3d at 132.

14

presumptively entitled to discovery of documents on prior complaints and police

histories because it could yield relevant information."[35]  For example, in *Bradley v.

City of New York*, defendants objected to producing records of complaints made to

the CCRB as well as pertinent Internal Affairs Bureau ("IAB") and Central

Personnel Index ("CPI") records for two police officers involved in plaintiff's

arrest.[36]  The court found these records potentially relevant, stating that "it is self-

evident that misconduct allegations may – depending on the nature of the

accusations – be highly relevant to the claims and defenses in this [section 1983]

case."[37]  With regard to civilian complaints, the court stated:

> There is no question that civilian complaints, whether or
> not deemed substantiated, may be significant in an
> assessment of an officer's qualifications and performance,
> particularly if the complaints reflect a pattern. . . .
> Furthermore, apart from a pattern of complaints about an
> officer's conduct from various citizens over an extended
> period of time, even an isolated complaint may - if the
> underlying conduct relates to the type of misconduct

---

[35]     *Gibbs v. City of New York*, 243 F.R.D. 95, 96 (S.D.N.Y. 2007) (citing
*Hurley v. Keenan*, No. 79 Civ. 4772, 1984 WL 358, at *3 (S.D.N.Y. May 8, 1984)
("[P]lainly any proceeding - whether administrative, civil or criminal - in which
one of the defendants was charged with or investigated for possible abuses of the
type alleged by plaintiff could yield relevant information.").

[36]     *See* No. 04 Civ. 8411, 2005 WL 2508253, at *1 (S.D.N.Y. Oct. 3,
2005).

[37]     *Id.*

alleged in the complaint - lead to the discovery of admissible evidence.[38]

In sum, disciplinary records and civilian complaints have "frequently played a role in the court's analysis of an array of claims under section 1983."[39] Thus, numerous courts "have repeatedly directed production of [CCRB] complaints, whether substantiated or unsubstantiated or even withdrawn, as well as records of complaints reflected in the CPI and IAB investigative records . . . ."[40]

---

[38]    *Id.* (citing *Vann v. City of New York*, 72 F.3d 1040, 1045 (2d Cir. 1995) (police official acknowledged "that the very fact that an unusual number of civilian complaints had been filed, without regard to how they were ultimately resolved, could create concern" about the officer's fitness).

[39]    *Id.* at *2.

[40]    *Id.* (citing *Vann*, 72 F.3d at 1042 (summarizing history of such complaints from the district court record; court then relied on that record in reversing award of summary judgment); *Mahan v. City of New York*, No. 00-CV-6648, 2005 WL 1677524, at *4-5 (E.D.N.Y. July 19, 2005) (reviewing, on summary judgment motion, defendant officer's CCRB history, including "unsubstantiated" complaints, as well as disciplinary history); *Granato v. City of New York*, No. 98-CV-667, 1999 WL 1129611, at *1 n.4 (E.D.N.Y. Oct. 18, 1999) (on summary judgment motion, court reviewed CCRB history, including unsubstantiated complaints); *Morrissey v. City of New York*, 171 F.R.D. 85, 88-89 (S.D.N.Y. 1997) (ordering production of records reflecting CCRB complaints, including unsubstantiated ones, as well as "disciplinary incidents"); *Malsh v. New York City Police Dep't*, No. 92 Civ. 2973, 1995 WL 217507, at *2 & n.5 (S.D.N.Y. Apr. 11, 1995) (ordering production of all CCRB records pertaining to similar incidents, whether or not substantiated, as well as disciplinary complaints)).

16

This issue, however, is not ripe for a ruling. No evaluation of the probative value of prior disciplinary records and CCRB complaints can be made in the absence of a review of such records. Defendants must produce any and all internal New York City Police Department disciplinary records, including IAB and CPI records, as well as any and all CCRB complaints, for *in camera* inspection at the October 29th pre-trial conference. This Court will determine the admissibility of any such records after its *in camera* review.

In a similar vein, I note that plaintiff objects to four of defendants' witnesses on the grounds that these witnesses were not disclosed during discovery, plaintiff has no knowledge of what their testimony will be, plaintiff will be surprised by their testimony, their testimony will be irrelevant, and the prejudicial value outweighs the probative effect of their testimony.[41] Defense counsel has submitted a letter outlining the testimony of one of these witnesses, Assistant District Attorney James Zaleta .[42] According to that letter, defendants intend to call Zaleta to testify only as to the facts and circumstances regarding plaintiff's

---

[41]     *See* JPTO at 4 (objecting to Sergeant Louis Devirgilio, Assistant District Attorney James Zaleta, Sergeant Edward Grahn, and Police Officer Carl Ohsberg).

[42]     *See* 10/23/07 Letter from Hillary A. Frommer, Assistant Corporation Counsel.

17

prosecution resulting from his arrest on May 24, 2004. Defendants argue that Zaleta's testimony is relevant to the first element of plaintiff's malicious prosecution claim, *i.e.*, whether defendants initiated or continued a criminal prosecution against plaintiff. Defendants also argue that Zaleta's testimony is relevant as to whether the criminal proceedings terminated in plaintiff's favor.

Based on the proffer contained in defense counsel's letter, I find Zaleta's testimony to be relevant to plaintiff's malicious prosecution claim. Defendants are hereby permitted to call Zaleta to testify with regard to the commencement of the criminal prosecution against plaintiff and the reason the prosecution was terminated. Zaleta will also be permitted to explain the statute relied upon in dismissing plaintiff's case, section 30.30 of the New York Criminal Procedure Law. As for the remaining three witnesses, defendants should be prepared to proffer the testimony of these witnesses at the pre-trial conference. Depending on the substance of these proffers, plaintiff may be given the opportunity to depose these witnesses before trial.[43]

## G.    Defendants Seek to Preclude Plaintiff From Offering Any Evidence that Police Officer Andrew Eaton was Once a Defendant in this Action

---

[43]    This Court will also consider whether plaintiff will be permitted to depose Zaleta before trial, if he chooses to do so.

Defendants seek to preclude plaintiff from mentioning that Police Officer Andrew Eaton was once a defendant in this action.[44] Plaintiff argues that because Officer Eaton was a defendant when he testified during his deposition "his testimony should be viewed as that of any other party in a lawsuit and the capacity in which he testified when he testified becomes very important and relevant as it would enable the jury to be in a better position to weigh his evidence."[45]

Defendants have the better argument. This Court does not see how Officer Eaton's previous status as a defendant in this action could in any way help the jury better assess his testimony. The fact that Officer Eaton was a defendant at the time of his deposition is irrelevant as he will be testifying as a live witness at this trial. Therefore, if Officer Eaton testifies in person, plaintiff will be precluded from introducing his status as a former defendant. However, if Officer Eaton's deposition testimony is offered instead of his live testimony, due to some unforeseen unavailability, plaintiff will be allowed to introduce his former status.

---

[44]    *See* Def. Mem. at 21 ("The fact that Officer Eaton was once a defendant in this matter has absolutely no probative value in determining whether plaintiff's constitutional rights were violated by Sergeant McCarthy or Officer Neyland, nor would it be helpful in assessing Officer Eaton's Credibility as a witness.").

[45]    Pl. Mem. at 7.

19

**H.    Defendants Seek to Preclude Plaintiff From Offering Any Evidence that the City of New York was Once a Defendant in this Action and the City's Potential Indemnification of the Individual Defendants**

Defendants ask that plaintiff be precluded from introducing evidence that the City of New York may indemnify Sergeant McCarthy and/or Officer Neyland in the event that a jury finds either of them liable.  Defendants also seek to preclude  plaintiff from mentioning that the City of New York was once a defendant and that the defense attorneys are from the Corporation Counsel.

Although the jury will not be informed that the City of New York was once a defendant, identifying the defense attorneys as Assistant Corporation Counsel does not defeat this objective.  In my preliminary statements to the jury pool, I introduce the parties and their counsel.  It would be odd to identify defendants' attorneys only by name without a reference to the agency for which they work.  It is highly unlikely that the mere mentioning of Corporation Counsel will cause any potential jurors to view the City of New York as a "deep pocket." However, to avoid any prejudice whatsoever, I will inform the jury that the defendants are represented by attorneys from the Corporation Counsel because they are members of the New York City Police Department, which is an agency of the City of New York.

As for indemnification, plaintiff is precluded from offering any
evidence of potential indemnification by the City of New York. Although
defendants do not cite any Second Circuit law for this proposition, a number of
courts have held that evidence of indemnification is inadmissible.[46]  I agree with
these courts. Moreover, plaintiff has not opposed defendants' request on the issue
of indemnification.

## III.   CONCLUSION

As previously stated, defendants must bring to the pre-trial
conference the disciplinary records of McCarthy and Neyland as well as any
complaints made against them to the CCRB. Defendants should also be prepared
to proffer the testimony of the remaining witnesses to which plaintiff objects
(Devirgilio, Grahn, Ohsberg). A pre-trial conference has been scheduled for

---

[46]   *See, e.g., Lawson v. Trowbridge*, 153 F.3d 368, 379 (7th Cir. 1998)
("In the general case courts exclude evidence of indemnification out of a fear that
it will encourage a jury to inflate its damages award because it knows the
government - not the individual defendants - is footing the bill."); *Larez v.
Holcomb*, 16 F.3d 1513, 1518 (9th Cir. 1994) ("It has long been the rule in our
courts that evidence of insurance or other indemnification is not admissible on the
issue of damages, and, should any such information reach the ears of the jurors,
the court should issue a curative instruction."); *Halladay v. Verschoor*, 381 F.2d
100, 112 (8th Cir. 1967) ("Unless the fact that the plaintiff is insured or otherwise
indemnified is a material issue in the case, or unless the prejudicial effect has been
cured by an admonition or instruction to the jury to disregard it, it has been almost
universally held that the receipt of such evidence constitutes prejudicial error
sufficient to require reversal.").

October 29, 2007, in Courtroom 15C, at 2:30 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           October 25, 2007

22

## - Appearances -

**For Plaintiff:**

Anthony Ofodile, Esq.
Kathy Polias, Esq.
Ofodile & Associates, P.C.
498 Atlantic Avenue
Brooklyn, New York 11217
(718) 852-8300

**For Defendants:**

Hillary A. Frommer
Shawn D. Fabian
Frances Sands
Corporation Counsel of the
 City of New York
100 Church Street
New York, New York 10007
(212) 788-0823